IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-01826-WDM-MJW

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

KRISTINA SIEBERT,

    Plaintiff-Intervenor,

v.

CENTURA HEALTH CORPORATION d/b/a Colorado Sports and Spine Center,

    Defendant.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

Miller, J.

This matter is before me on a motion for summary judgment filed by Defendant Centura Health Corporation, d/b/a Colorado Sports and Spine Center ("CSSC"). I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required. For the reasons that follow, the motion will be denied.

Background[1]

This case arises out of Defendant's discharge of Plaintiff-Intervener Siebert

---

[1] Unless otherwise noted, the background facts, drawn from the parties' factual statements and supporting evidence, appear to be undisputed.

PDF Final

("Siebert") from her position as a Rehabilitation Technician with CSSC on June 10, 2003. Siebert had been employed by Defendant in that position since April 2003 although she had been on administrative leave from June 3, 2003 until her termination a week later. Siebert was placed on administrative leave during a meeting with Ms. Gillis ("Gillis"), the Rehabilitation Manager at CSSC pending her acquisition of hearing aids .

Siebert has had some degree (the degree is disputed) of hearing loss since birth. Defendant was aware that Siebert had hearing loss although the extent of the knowledge is disputed. Prior to beginning work and during a pre-employment health screening, Siebert filled out an Employee Health Information Sheet on which she disclosed that she had had hearing loss since birth. On the same form, Siebert represented that she did not require any accommodations to perform her job because of any physical or mental conditions, that she did not have conditions that would prevent her from performing the essential functions of the Rehabilitation Technician job, and that she did not have any communication problems. It is disputed whether Siebert had any additional conversation with the CSSC nurse at the pre-employment health screening regarding her hearing loss.

Before she began work, Siebert underwent a two-week orientation and training where she was instructed on various treatments and exercises. Siebert then went to work for Suzanne Stoke ("Stoke"), a physical therapist at CSSC. Stoke kept "Progress Notes" about the progress and work of Siebert. Defendant contends that these notes indicate performance problems while Plaintiff Equal Employment Opportunity

Commission ("EEOC") and Siebert (collectively "Plaintiffs") contend that many of the notes in the Progress Notes were attributable to Siebert's hearing loss. An appointment was scheduled between Siebert and Gillis for June 3, 2003 to discuss Siebert's job although who initiated the meeting and for what reason is in dispute. Nonetheless, Siebert and Gillis met and discussed Siebert's hearing loss (it is disputed whether this was the first time Siebert notified Defendant that her hearing loss was causing her difficulties with her job). After learning that Siebert was going to obtain hearing aids and contacting Human Resources for guidance, Gillis placed Siebert on administrative leave. During Siebert's administrative leave Dr. Ahnfeldt, a referring physician from whom Defendant received approximate 60% of its patients (Stoke Dep. 46:23–48:25), contacted Gillis with complaints about Siebert. Dr. Ahnfeldt requested[2] that Siebert no longer work with any of the patients that he referred to Defendant and that she not be in the part of Defendant's office that was leased from Dr. Ahnfeldt. Subsequently, on June 10, 2003 Gillis and Siebert met for a second time and Gillis terminated Siebert's employment with Defendant. At no point did Siebert work for Defendant while using hearing aids.

Based on these facts, EEOC brought this action under the Americans with Disabilities Act (ADA) against Defendant on behalf of Siebert alleging wrongful discharge in violation of 42 U.S.C. § 12112(a), failure to reasonably accommodate in violation of 42 U.S.C. § 12112(b)(5)(a), and retaliation in violation of 42 U.S.C. § 12203(a).

---

[2] There is some dispute whether Dr. Ahnfeldt made these demands. His deposition does not resolve the dispute. (Ahnfeldt Dep. 10:16–11:25; 15:16–16:25).

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

A plaintiff alleging employment discrimination may prove intentional discrimination directly or indirectly. Under the direct approach, plaintiffs present direct evidence that their status as a protected person was the reason for the adverse employment action. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984)) (addressing age discrimination); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997) (addressing disability discrimination). However, more typically, cases are brought under the indirect analysis set forth in *McDonnell Douglas Corp v. Green*, which provides a burden-shifting framework for assessing indirect, or

circumstantial, evidence. 411 U.S. 792, 802-804 (1973); *see generally St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-508 (1993); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (applying *McDonnell Douglas* framework to ADA claims).

In this case, Siebert has elected to proceed under the *McDonnell Douglas* regime. Under this framework, plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff[s'] rejection." *Id.* at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)); *see also St. Mary's Honor Center*, 509 U.S. at 506 ("[e]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee" (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material)). "In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to 'raise a genuine issue of material fact on each element of the *prima facie* case, as modified to relate to differing factual situations.'" *Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1323 (10th Cir. 1997)). If plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, plaintiffs bear the "ultimate burden" of showing that these proffered reasons are a

pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason or that its proffered reason "is unworthy of credence." *Id.* (quotation omitted); *see Kendrick*, 220 F.3d at 1230 (listing three ways of showing pretext: (1) evidence that the defendant's stated reason for the adverse action was false; (2) evidence that the defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or practice when making the adverse decision).

## Discussion

In this case, Defendant presents three arguments in support of summary judgment. First, it claims that Siebert cannot make out a prima facie case because she is not disabled under any of the ADA's three definitions of this term. Second, Defendant generally argues that Siebert was discharged for legitimate, non-discriminatory reasons—an assertion that I construe as an argument that Siebert cannot demonstrate pretext.[3] And third, the undisputed fact that Dr. Ahnfeldt did not

---

[3] I note that this argument from Defendant is so skeletal, poorly-developed, and devoid of any citation to authority that it could well be construed as not an argument for summary judgment at all, but rather a mere recitation of Defendant's legitimate, non-discriminatory reasons for firing Siebert.

want Siebert treating any of his patients conclusively establishes that Defendant had no choice but to fire Siebert.[4]

1.   <u>Prima Facie</u> Case

Defendant's main argument is that Plaintiffs have not met their burden of demonstrating a genuine issue of material fact for each element of the *prima facie* case. To establish a *prima facie* case of disability discrimination the plaintiff must show "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003). Specifically, Defendant argues that Siebert is not disabled under any of the ADA's three definitions of the term. *See* 42 U.S.C. § 12102(2) (defining disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."). Furthermore, Defendant contends that under *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), the proper test is whether Siebert's hearing impairment, *as corrected by*

---

[4] The parties' briefs also raise the issue of whether Siebert's retaliation claim may survive even if summary judgment is granted as to her ADA discrimination claims. Specifically, Plaintiffs argue that Defendant engaged in unlawful retaliation by unjustifiably contesting Siebert's unemployment compensation claim. In response, Defendant argues that this is a new allegation that cannot support Plaintiffs' retaliation claim because it is not contained in the Plaintiffs' pleadings. Since I find that Defendant's motion for summary judgment should be denied, I need not definitively resolve this issue. Nonetheless, I note that in the Final Pretrial Order (Docket No. 96), Plaintiffs clearly indicate that their retaliation claim is based, at least in part, upon Defendant's resistance to Siebert's unemployment claim. *See Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation.").

*her hearing aids*, substantially limits a major life activity. Defendant argues that, when judged under this standard, Siebert's hearing impairment falls short of a disability. Plaintiffs disagree, arguing that Siebert's condition must be determined as of the time of the alleged discrimination, when Siebert did not use hearing aids because she could not afford to purchase them.

I agree with Plaintiffs. In arguing that Siebert's impairment must be judged as mitigated by hearing aids, Defendant relies exclusively on the reasoning set forth in *Sutton*.[5] However, Defendant incorrectly applies *Sutton*. *Sutton* does not require that mitigating factors be considered when they are not used by plaintiff. *See* 527 at 482 ("[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act.").

Furthermore Defendant fails to analyze the ramifications of the fact that Siebert did not purchase the hearing aids until after the decision to fire her had already been made. In their response briefs, Plaintiffs cite authority supporting their position that the degree of impairment must be judged at the time of the adverse employment action, i.e. without the use of hearing aids. *Sutton*, 527 U.S. at 482; *EEOC v. Voss Elec. Co.*, 257 F.Supp. 2d 1354, 1358–59 (W.D. Okla. 2003). Notably, although not cited by Plaintiffs, the Tenth Circuit appears to agree with this principle. *Frazier v. Simmons*, 254 F.3d 1247, 1256 (10th Cir. 2001) (holding that "we must determine what activities [Plaintiff]

---

[5] It is undisputed that Plaintiff did not acquire the hearing aids until after the decision to terminate her employment had already been made.

was unable to perform at the time of the employment decision" (citing *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) ("The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision"))). Plaintiffs also cite authority that mitigating measures that are available but unused by a plaintiff should not be considered when determining disability. *Nawrot v. CPC Intern.*, 277 F.3d 896, 904 (7th Cir. 2002) ("We consider only the measures actually taken and consequences that actually follow."); *Finical Collections Unlimited, Inc.*, 65 F.Supp. 2d 1032, 1037 (D. Ariz. 1999) (Regardless of whether Plaintiff "would benefit from the use of hearing aids, Plaintiff does not use them.").[6]

Defendant, however, does not respond to these arguments in its reply brief, but rather focuses exclusively on three completely unrelated issues. As a result, I find that Defendant has conceded this argument for summary judgment purposes. Alternatively, I find that Defendant has failed to demonstrate entitlement to summary judgment because it has failed to develop this argument in any meaningful way.

Defendant also appears to argue that Plaintiff's disability, even without the mitigating effects of hearing aids, was not "substantially limiting." Defendant argues that because Siebert was able to hold other jobs and obtain an education her hearing loss was not substantially limiting. Plaintiffs dispute this characterization of Siebert's

---

[6] It should be noted that courts are in dispute regarding whether mitigating measures that would be helpful but are not used should be considered when determining disability. *See Sever v. Henderson*, 381 F.Supp.2d 405, 415 (M.D. Pa. 2005) (cataloguing the conflicting decisions regarding the issue). However, because Defendant has not argued the issue in its brief, I need not decide the issue.

hearing impairment and contend that Siebert's hearing loss substantially limits her major life activity of hearing. See generally 29 C.F.R. § 1630.2(i) (defining "major life activity" and "substantially limits").

Plaintiffs have put forth specific evidence in the form of a medical opinion by Dr. Lipkin, that Siebert can only hear 24% of speech, has had the hearing impairment since birth, and that she "frequently misunderstands words" without hearing aids. (Linkin Report). Plaintiff's have also provided a letter from the Miracle Ear Center, where Siebert apparently received her hearing aids, which states that Siebert had "moderate to severe low frequency hearing loss," and that Siebert's unmitigated hearing ability "provides insufficient volume for Mrs. Siebert to comfortable [sic] hear in normal listening environments, i.e. one on one conversation." (Pappert Report). I conclude that Plaintiffs have demonstrated a genuine issue of material fact regarding Siebert's classification as disabled within the meaning of the ADA. With that decision, I decline to address whether Siebert fits within the other two definitions of disabled under the ADA (whether there is a record of such impairment or whether CSSC regarded Siebert as having such an impairment). See 42 U.S.C. 12102(2).

Whether Siebert is disabled is the only *prima facie* element that Defendant contends Plaintiffs have not met. Therefore, I find that Plaintiffs have raised genuine issues of material fact for all the elements of the *prima facie* case.

2. <u>Legitimate Non-discriminatory Reasons for Discharge</u>

Defendant engages in a recitation of the legitimate non-discriminatory reasons that it proffered for Siebert's dismissal. The recitation of these reasons for Siebert's

dismissal fulfill Defendant's burden at the second stage of the *McDonnell Douglas* burden shifting framework. However, this recitation also appears to be an argument that Plaintiffs have not met their subsequent burden of demonstrating pretext and, therefore, Defendant is entitled to summary judgment.

Plaintiffs respond by arguing that they have adequately established that there is a genuine issue of material fact as to whether the Defendant's proffered reasons are merely pretext for discrimination. Plaintiffs contend that when a plaintiff is able to cast substantial doubt upon most of the legitimate non-discriminatory reasons provided by the defendant, there may be an inference that the other legitimate non-discriminatory reasons are also false. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) (addressing the issue under a motion for judgment as a matter of law).[7] Plaintiffs argue that they have shown that many of the reasons Defendant proffers as legitimate non-discriminatory reasons for Siebert's discharge are related to and, in fact, caused by her hearing impairment. As such, they are not legitimate, non-discriminatory reasons for discharge. Plaintiffs argue that this casts substantial doubt on the validity and truthfulness of many of Defendant's legitimate reasons for discharge and, under *Tyler*, they have established that a reasonable jury could find that all the Defendant's reasons are pretext for discrimination.

I agree with Plaintiffs. Defendant lists eight reasons for Siebert's dismissal and I find that a reasonable jury could find that at least five of the reasons would be or could

---

[7] I note that Defendant's reply brief does not respond to this proposition nor to the argument that the allegedly legitimate non-discriminatory reasons Defendant cites for Siebert's dismissal are mostly based on issues arising from Siebert's hearing impairment.

be caused by substantially limited hearing and may not occur if proper hearing aids were used or proper accommodations were made.[8] However, for this to raise a genuine issue of fact as to pretext, Defendant must have been aware of the hearing impairment and that it could be related to Siebert's performance issues. Plaintiffs claim that Defendant was made aware of Siebert's hearing impairment on several occasions. It is undisputed that Siebert disclosed the hearing impairment on the Employee Health Information Sheet prior to beginning her employment with Defendant. I do note, however, that on the same information sheet Siebert stated that she did not need any accommodations. It is also undisputed that Siebert told Gillis about her hearing impairment and her intention to obtain hearing aids at their meeting on June 3, 2003. Therefore, it is clear that Defendant had notice of Siebert's hearing impairment when it made the decision to terminate her employment on June 10, 2003.[9] I also note that Defendant has changed its position with regard to their knowledge and consideration of Siebert's hearing loss in three separate instances (CSSC Dep. 66:12–66:21; 80:7–80:23; 82:21–84:20). In one instance Defendant considered whether the

---

[8] The five reasons that I find are potentially caused by hearing impairment are "(1) was rude to patients both in person and over the phone; (2) failed to follow simple instructions; (3) failed to follow-through on her supervisor's directives; . . . (7) improperly administered certain treatments to patients, creating very serious potential injury to patients; and (8) upset the physician whose patients comprised the majority of CSSC's clientele to the pont where he demanded that none of his patients receive any treatment from Siebert and that she not return to the portion of his office rented to CSSC." (Def.'s Mot. Summ. J. at 13.)

[9] It should also be noted that Plaintiffs claim that Siebert told CSSC personnel about her hearing impairment on at least two other occasions–once to the CSSC nurse during the pre-employment screening and another time to Stoke when she requested Stoke to make reasonable accommodations while they were working together. Defendant denies that Siebert made these statements.

performance issue could be related to her hearing loss. (CSSC Dep. 82:21–84:20). Although I cannot make credibility determinations, these facts and the undisputed facts of Defendant's knowledge give rise to a genuine issue of material fact as to pretext. Therefore, I find that Defendant is not entitled to summary judgment based on this argument.

3.  Dr. Ahnfeldt's Request

Finally, Defendant argues that it had no choice but to dismiss Siebert because Dr. Ahnfeldt demanded that she not work in his building nor with any patients that he referred to CSSC. Defendant alleges that if Siebert could not work with Dr. Ahnfeldt's patients then, essentially there was no job for her. In response, Plaintiffs argue that Defendant failed to provide Siebert with adequate accommodation for her hearing loss and, therefore, the ADA protects her from being discharged based on issues that arise from her unaccommodated disability. Plaintiffs contend that many of the complaints were a direct result of Siebert's hearing impairment, which would have been alleviated by the use of hearing aids. Accordingly, Plaintiffs argue that Defendant's refusal to accommodate her disability was essentially the source of Dr. Ahnfeldt's complaints.

I agree with Plaintiff. The ADA protects against a termination decision based on problems that arise from a lack of accommodation for a disability. 42 U.S.C. § 12112(a). I also note that I find that there is a genuine issue of material fact as to whether Defendant knew about the disability's impact on Siebert's work and whether Defendant refused accommodation for Siebert.

Accordingly, it is ordered that Defendant's motion for summary judgment, filed December 4, 2006 (Docket No. 59) is denied.

DATED at Denver, Colorado, on September 20, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge